# In the United States Court of Federal Claims
No. 16-105
February 28, 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ERIC P. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | General Schedule Classification And Pay System, 5 U.S.C. §§ 5101, 5104, 5332, 5335–36; <br> Tucker Act Jurisdiction, 28 U.S.C. § 1491; <br> Two-Step Promotion Rule, 5 U.S.C. § 5334(b); <br> Rules Of The United States Court Of Federal Claims ("RCFC") 12(b)(1) (Lack Of Jurisdiction), 12(b)(6) (Failure To State Claim); <br> FBI Policy Directive 0624D § 9.5.3. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Richard L. Swick**, Swick & Shapiro, P.C., Washington, D.C., Counsel for the Plaintiff.

**Sarah Choi**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER
GRANTING THE GOVERNMENT'S MOTION TO DISMISS**

**BRADEN**, *Judge*.

I.   **RELEVANT FACTUAL BACKGROUND.**[1]

Congress enacted the General Schedule Classification and Pay System ("GS System") to establish the salaries of certain federal employees. *See* 5 U.S.C. § 5101 (describing the purpose of the GS System). The GS System is "a schedule of annual rates of basic pay, consisting of 15 grades, designated 'GS-1' through 'GS-15,' consecutively, with 10 rates [*i.e.*, steps] of pay for

---

[1] The relevant facts discussed herein were derived from: the January 20, 2016 Complaint ("Compl."); Plaintiff's June 6, 2016 Response to the Government's May 5, 2016 Motion To Dismiss ("Pl. Resp.") and Exhibits attached thereto ("Pl. Resp. Exs. 1–10"); Plaintiff's July 6, 2016 Amended Response to the Government's May 5, 2016 Motion To Dismiss ("Pl. Amend. Resp.") and exhibits attached thereto ("Pl. Amend. Resp. Exs. 1–6"); and the Government's Appendix ("Gov't App'x A1–A25"), attached to the Government's July 29, 2016 Reply ("Gov't Reply") to Plaintiff's July 6, 2016 Amended Response, including the July 28, 2016 Declaration of Tanya Wilson ("7/28/16 Wilson Decl."), an Assistant Section Chief in the FBI's Human Resources Division.

each such grade." 5 U.S.C. § 5332(a)(2). An employee's qualifications and experience is designated by grade and step. *See* 5 U.S.C § 5104 (providing standards for grade classification); 5 U.S.C §§ 5335–36 (providing criteria for step increases within each grade).

Mr. Eric P. Williams is employed by the Federal Bureau of Investigation ("FBI"); his salary is set by the GS System. Compl. ¶ 5. On January 7, 2007, Mr. Williams was first assigned to the FBI's San Francisco Division as a Special Agent. Compl. ¶ 5. Review of the relevant documents, including the Standard Form 50s ("SF-50") issued by the FBI, shows the following subsequent employment history:

- Prior to December 2012, Mr. Williams was classified at a GS-13, Step 2 level. Gov't App'x at A6 (12/16/2012 SF-50 evidencing payment at a GS-13, Step 2 level); Pl. Amend. Resp. Ex. 2.

- On December 12, 2012, Mr. Williams received an 18-month Temporary Duty Assignment position at the FBI's Counterterrorism Division, and was temporarily classified at a GS-14, Step 1 level. Gov't App'x at A6 (12/16/2012 SF-50 evidencing promotion to GS-14, Step 1 level); *see also* Compl. ¶ 11.

- On December 15, 2013, Mr. Williams received a step increase from a GS-14, Step 1 level to a GS-14, Step 2 level. Pl. Resp. Ex. 3 (12/15/2013 SF-50 evidencing step increase); *see also* Compl. ¶ 9.

- On June 4, 2014, Mr. Williams was selected for a permanent GS-14 position at the FBI's Office of Congressional Affairs in Washington, D.C. Compl. ¶ 10.

- On June 15, 2014, after the end of the Temporary Duty Assignment position, Mr. Williams was reclassified at a GS-13, Step 8 level. Gov't App'x at A7 (6/15/2014 SF-50 evidencing "Change To Lower Grade" from a GS-14, Step 2 position to a GS-13, Step 8 position); *see also* Compl. ¶ 11.

- On August 24, 2014, Mr. Williams was promoted to a permanent position at the Office of Congressional Affairs and was classified at a GS-14, Step 2 level. Gov't App'x at A10 (8/24/2014 SF-50 evidencing "Promotion" to GS-14, Step 2 Level); *see also* Compl. ¶¶ 12–14.

- Mr. Williams' June 15, 2014 "erroneous placement" at a GS-13, Step 8 level was discovered during "routine processing" at the end of August 2014. 7/28/16 Wilson Decl. ¶ 14

- In September 2014, the FBI Human Resources Division issued two SF-50s that were backdated to take effect in June of 2014. 7/28/16 Wilson Decl. ¶ 14; *see also* Pl. Amend. Resp. at 3–4.

- One SF-50 (the "Cancellation" SF-50) served to cancel Mr. William's classification at a GS-13, Step 8 level. Gov't App'x at A8 (6/15/2014 SF-50 evidencing

2

cancellation of "Change To Lower Grade"); *see also* Pl. Amend. Resp. at 3–4. The "Cancellation" SF-50 was backdated to take effect on June 15, 2014. Gov't App'x at A8 (6/15/2014 SF-50); *see also* Pl. Amend. Resp. at 4.

- The other SF-50 (the "Extension" SF-50) served to set Mr. Williams' pay at a GS-14, Step 2 Level from June 1, 2014 to September 7, 2014. Gov't App'x at A9 (6/1/2014 SF-50 evidencing an "Extension of Promotion" at a GS-14, Step 2 level). The "Extension" SF-50 was backdated to take effect June 1, 2014. Gov't App'x at A9 (6/1/2014 SF-50).

- During the two-month period in which he was paid at a GS-13, Step 8 level, Mr. Williams received $158.60 more than he would have at a GS-14, Step 2 level. 7/28/16 Wilson Decl. ¶ 15. The FBI recouped the salary overpayment, as reflected by Statements of Earnings issued to Mr. Williams from November 2, 2014 to December 13, 2014. Gov't App'x at A12-A14.

In short, Mr. Williams is classified at a GS-14, Step 2 level. Compl. at 4. From June to August 2014, however, Mr. Williams was classified at a GS-13, Step 8 level. Compl. ¶¶ 11–12. In September of 2014, the FBI corrected this via the issuance of the "Cancellation" SF-50 and the "Extension" SF-50. The "Cancellation" SF-50 cancelled Mr. Williams's classification at a GS-13, Step 8 level, and the "Extension" SF-50 ensured that Mr. Williams received pay at a GS-14, Step 2 level for the entire period between the end of his Temporary Duty Assignment on June 15, 2014, and the beginning of his permanent position at the Office of Congressional Affairs on August 24, 2014. Gov't App'x at A8–A9. After these documents were issued, the FBI recouped the additional pay that Mr. Williams received from June to August, 2014. Gov't App'x at A12–A14.

## II. PROCEDURAL HISTORY.

On January 20, 2016, Mr. Williams ("Plaintiff") filed a Complaint in the United States Court of Federal Claims, alleging that he should have been promoted from a GS-13, Step 8 level to a GS-14, Step 5 level, pursuant to 5 U.S.C. § 5334(b), when he began work at the FBI's Office of Congressional Affairs on August 24, 2014. ECF No. 1.

On May 5, 2016, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6), together with an Appendix to the Government's May 5, 2016 Motion To Dismiss including FBI Policy Directive 0624D. ECF No. 6. On June 6, 2016, Plaintiff filed a Response and a Cross-Motion For Summary Judgment, together with a Statement Of Undisputed Facts and other exhibits. ECF No. 7–8.

On June 15, 2016, the Government filed a Motion To Suspend Briefing On Plaintiff's Cross-Motion For Summary Judgment. ECF No. 10. On June 23, 2016, Plaintiff filed an Opposition. ECF No. 11. On June 27, 2016, the court granted the Government's June 15, 2016 Motion to afford the court an opportunity to resolve threshold jurisdictional questions presented by the Government's May 5, 2016 Motion To Dismiss. ECF No. 12.

On July 6, 2016, Plaintiff filed a Motion To Amend And Supplement Plaintiff's Opposition to the Government's May 5, 2016 Motion To Dismiss. ECF No. 13. On July 13, 2016, the

Government filed an Opposition. ECF No. 14. On July 15, 2016, Plaintiff filed a Reply. ECF No. 14. On July 18, 2016, the court granted Plaintiff's July 6, 2016 Motion To Amend And Supplement Plaintiff's June 6, 2016 Opposition to Defendant's May 5, 2016 Motion To Dismiss. ECF No. 16. On July 29, 2016, the Government submitted a Reply ("Gov't Reply") and an Appendix, including the July 28, 2016 Declaration of Tanya Wilson, an Assistant Section Chief in the FBI's Human Resources Division. ECF No. 17.

On October 13, 2016, the court entered a Stay Order until December 12, 2016, to allow the Government to ascertain whether any internal administrative remedies were available to resolve Plaintiff's claims and, if so, whether they were exhausted. ECF No. 18. On December 12, 2016, the Government filed a Supplemental Brief ("Gov't Supp. Br.") and Exhibits ("Gov't Supp. Br. Exs. 1–2"), advising the court that "no official administrative procedures and remedies exist within the [FBI] covering when a Special Agent is 'dissatisfied with a grade or step classification,'" and "that no internal agency remedies were required to be exhausted before [P]laintiff filed his . . . complaint, or, to the extent [P]laintiff was required to exhaust remedies, he did so." ECF No. 19. Although no formal policy apparently existed, Plaintiff nevertheless contacted the FBI's Human Resources Division and, on May 8, 2015, received a letter explaining that the June 15, 2014 adjustment granting Plaintiff an appointment at a GS-13, Step 8 level was "in error," because Plaintiff should not have been granted the "highest previous rate" when his Temporary Duty Assignment ended. Gov't Supp. Br. Ex. 2.

### III. DISCUSSION.

#### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748

4

(Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [t]he plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In this case, Plaintiff has met his burden to establish jurisdiction, as explained below.

**B.      Standard of Review For A Motion to Dismiss, Pursuant to RCFC 12(b)(1) and RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [RCFC] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). In order to survive a motion to dismiss, however, the court "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.*; *see also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

**C.      Plaintiff's January 20, 2016 Complaint.**

The January 20, 2016 Complaint alleges that the FBI violated 5 U.S.C § 5334(b), known as the "two-step promotion rule," by failing to classify Plaintiff as GS-14, Step 5 when he assumed a position at the FBI's Office of Congressional Affairs on August 24, 2014. Compl. ¶¶ 13, 14.

Section 5334(b) provides that:

> An employee who is promoted or transferred to a position in a higher grade is entitled to basic pay[,] at the lowest rate of the higher grade [that] exceeds that employee's existing rate of basic pay[,] by not less than two step-increases of the grade from which [that employee] is promoted or transferred.

5 U.S.C. § 5334(b).

The effect of section 5334(b) is to ensure that grade promotions within the GS System do not result in a loss of pay, "[b]ecause the pay associated with high steps in one grade is often greater than the pay associated with low steps in the next higher grade, a promotion from, for example, GS–10, step 10, to GS–11, step 1, would entail a loss of pay if it were not for the operation of section 5334(b)." *See Brodowy v. United States*, 482 F.3d 1370, 1374 (Fed. Cir. 2007).

The Complaint alleges that Plaintiff was paid as a GS-13, Step 8 on August 24, 2014, when he was promoted to a new position at the Office of Congressional Affairs. Compl. ¶ 12. The new Office of Congressional Affairs position, however, was a classified at a GS-14 level. Compl. ¶¶ 12, 14.

Under section 5334(b), an employee that is promoted to a higher GS grade is entitled to a two-step pay increase. 5 U.S.C. § 5334(b). Therefore, the Complaint alleges that Plaintiff was entitled to pay at a GS-14, Step 5 level, because that rate exceeded his GS-13, Step 8 pay by two-step increases. Compl. ¶ 13. As such, Plaintiff is owed $33,900 in backpay, *i.e.,* the difference between what Plaintiff would have been paid at a GS-14, Step 5 level and what he was paid at a GS-14, Step 2 level, plus interest. Compl. at 4. In addition, Plaintiff requests an order directing the FBI to place Plaintiff at a GS-14, Step 5 level. Compl. at 4.

### D. The Government's May 5, 2016 Motion To Dismiss.

#### 1. The Government's Argument.

The Government argues that an award of money damages requires the court to make the predicate determination that the FBI acted unlawfully, when Plaintiff was classified at a GS-14, Step 2 level on August 24, 2014. Gov't Mot. at 7. Specifically, the court would need to declare "that the FBI's extension of [Plaintiff's] temporary GS-14 status was unlawful, along with making a concomitant determination that [Highest Previous Rate[2]] should have been applied and [Plaintiff] should have been classified as GS-13, Step 8 for two months, then reclassified as GS-14, Step 5, notwithstanding applicable FBI policies to the contrary." Gov't Mot. at 10.

The court does not have jurisdiction to adjudicate such predicate determinations. *See Testan*, 424 U.S. at 402 ("[O]ne is not entitled to the benefit of a position until he has been duly appointed to it."); *see also United States v. King*, 395 U.S. 1, 3 (1969) (holding that the United States Court of Federal Claims does not have the power to grant equitable relief in the form of a predicate determination); *Dawson v. United States*, 116 Fed. Cl. 664, 670 (2014) ("If [relief] requires a predicate determination that the employee should be in a different position, pay grade, or classification, that predicate determination cannot be made by this court."). In this case, since any request for damages would require a predicate determination that the FBI took unlawful actions, the United States Court of Federal Claims does not have jurisdiction to adjudicate the allegations in the January 20, 2016 Complaint. Gov't Mot. at 9–10.

---

[2] Pursuant to FBI Policy Directive 0624D § 8.1, the Highest Previous Rate ("HPR") "is the highest rate of basic pay previously paid to an individual while employed in a civilian position."

6

The court also does not have jurisdiction to adjudicate whether the FBI allegedly violated section 5334(b), because it "is inapplicable on the facts." Gov't Mot. at 10. Section 5334(b) applies only when an employee is promoted or transferred to a higher grade. Gov't Mot. at 10. Plaintiff, however, was "laterally promoted" from one GS-14 level position to another GS-14 level position. Gov't Mot. at 11. Although Plaintiff was temporarily misclassified at a GS-13, Step 8 level position, this was contrary to FBI policy, because Plaintiff was not eligible to be classified at the "Highest Previous Rate" ("HPR") within the GS-13 level. Gov't Mot. at 11. The June 11, 2013 FBI Policy Directive 0624D provides that "any employee on a temporary promotion" who is selected for a permanent higher-grade position shall *not* be placed at the HPR in the lower grade during the time in between the end of their Temporary Duty Assignment position and the beginning of their new position. *See* FBI Policy Directive 0624D § 9.5.3.

In the alternative, in light of the existing FBI Policy, Plaintiff also failed to state a claim on which relief can be granted, requiring the court to dismiss the January 20, 2016 Complaint, pursuant to RCFC 12(b)(6). Gov't Mot. at 11.

### 2.   Plaintiff's Response.

Plaintiff responds that the January 20, 2016 Complaint does not request that the court order a promotion or reclassification, since Plaintiff previously received a promotion and reclassification to a GS-14 level. Pl. Resp. at 4–5. Instead, the January 20, 2016 Complaint requests an "adjustment of his step." Pl. Resp. at 5. Plaintiff adds that that the court has jurisdiction to adjudicate the January 20, 2016 Complaint, because section 5334(b) is a "substantive source of law" and is "money-mandating." Pl. Resp. at 8 (citing *Little v. United States*, 124 Fed. Cl. 256, 276–77 (2015) ("[Section 5334] establishes a pay rate entitlement . . . for certain Federal employees described in the statute, including an employee who is promoted or transferred to a position in a higher grade.").

In addition, the court has jurisdiction to issue declaratory or injunctive orders, in limited circumstances, where a complete remedy requires judicial action. *See Cycenas v. United States*, 120 Fed. Cl. 485, 502 (2015) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records[.]" (quoting 28 U.S.C. 1491(a)(2))). Accordingly, Plaintiff reasons that the court can issue an order to sets his salary at a GS-14, Step 5 level. Pl. Resp. at 9.

### E.   Plaintiff's July 6, 2016 Amended Response.

### 1.   Plaintiff's Argument.

Plaintiff requested leave to amend the June 6, 2016 Response, because Plaintiff initially thought that the "Cancellation" SF-50, dated June 15, 2014, applied to the "Extension" SF-50, dated June 1, 2014, that extended Plaintiff's promotion at a GS-14, Step 2 level. Pl. Amend. Resp. at 4; *see also* Pl. Amend. Resp. Ex. 5 (6/1/2014 SF-50 extending Plaintiff's temporary promotion to a GS-14, Step 2 level until 9/7/2014). But, a conference with the Government's counsel and

7

review of the "Cancellation" SF-50 satisfied Plaintiff that it canceled Plaintiff's temporary classification at a GS-13, Step 8 level and did not apply to Plaintiff's GS-14, Step 2 classification. Pl. Amend. Resp. at 4; Pl. Amend. Resp. Ex. 6 (6/15/2014 SF-50 cancelling Plaintiff's classification at a GS-13, Step 8 level).

Therefore, Plaintiff now argues that the "Cancellation" SF-50 was "created" by the FBI two months after he was promoted, but backdated to "support [the FBI's] effort to recharacterize Plaintiff's reduction to a lower grade, so that it could deprive him of the statutory two-step increase provided by 5 U.S.C.A. § 5334(b)." Pl. Amend. Resp. at 1–2. Plaintiff adds that "it is well settled than an SF-50 is not a legally operative document controlling on its face an employee's status and rights. [Instead, it] is the true nature of the appointment that governs the SF-50." Pl. Amend. Resp. at 4 (quoting *Etokitiot v. Merit Sys. Prot. Bd.*, 63 F. App'x 481, 484 n.1 (Fed. Cir. 2003) (internal citation omitted)) (internal quotation marks omitted).

### 2. The Government's Reply.

The Government replies that Plaintiff's temporary classification at the GS-13, Step 8 level in June 2014 was erroneous and contrary to the FBI's HPR policy, but it was corrected as soon as the error was known. Gov't Reply at 3. The FBI realized that the GS-13, Step 8 classification was erroneous during "routine processing" of Plaintiff's permanent promotion. Gov't Reply 3. The misclassification was corrected via the "Cancellation" SF-50 in September 2014. Gov't Reply at 3, 5. Plaintiff's wage discrepancy, caused by the temporary misclassification in November 2014, was resolved by deducting $158.60 in "Salary Overpayment" from Plaintiff's November 2014 Earnings Statement—*i.e.*, the difference between what Plaintiff was paid at a GS-13, Step 8 level and would have been paid at a GS-14, Step 2 level. Gov't Reply at 7. There is "nothing nefarious" about the cancellation and backdating of Plaintiff's records; the FBI simply self-identified and remedied a payment error. Gov't Reply at 7. Therefore, Plaintiff's claim for backpay is based upon a mistake in classification that was corrected before this case was filed. Gov't Reply at 7.

### F. The Court's Resolution.

#### 1. The Government's 12(b)(1) Motion To Dismiss For Lack Of Jurisdiction.

The United States Court of Federal Claims has jurisdiction to adjudicate claims arising under federal statutes that are "money-mandating." *See Todd*, 386 F.3d at 1093 (explaining that, under the Tucker Act, the United States Court of Federal Claims has jurisdiction over statutes that are "money-mandating"). Even if claims are made pursuant to a money-mandating statute, however, the United States Court of Federal Claims also must have jurisdiction to make the necessary determinations to provide the relief sought. *See Testan*, 424 U.S. at 402 (holding that the violation of a statute relating to federal employment does not automatically create "a cause of action against the United States for money damages"). When a plaintiff invokes a money-mandating statute and makes a non-frivolous assertion that he is entitled to relief under that statute, the United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has jurisdiction to adjudicate the claims in the complaint. *See Fisher v. United States*, 402 F.3d 1167, 1172–76 (Fed. Cir. 2005) (holding that the United States Court of Federal

Claims had jurisdiction to adjudicate a well-pleaded, non-frivolous complaint, grounded on a statute that was "reasonably amenable" to being read as mandating compensation).

In this case, the January 20, 2016 Complaint alleges, under 5 U.S.C § 5334(b), that the FBI should have placed Plaintiff at a GS-14, Step-5 level, when he was promoted to the GS-14 level, so Plaintiff is owed $33,900 in backpay, plus interest. Compl. at 4. The United States Court of Appeals for the Federal Circuit has stated that section 5334(b) is a money-mandating statute. *See Brodowy*, 482 F.3d at 1375 ("[S]ection 5334(b) is a 'money-mandating statute' . . . if the appellants had been able to show they were persons entitled to the benefits of that statute, they would have been entitled to relief from the [United States] Court of Federal Claims."). Therefore, Plaintiff has properly invoked a money-mandating statute.

Nevertheless, the Government argues that the court lacks jurisdiction, because granting the relief requested would require an order "reclassifying" Plaintiff at a different position—*i.e.*, placing him at a GS-14, Step 5 level, instead of at a GS-14, Step 2 level. Gov't Mot. at 10. The "established rule" for federal employees "is that one is not entitled to the benefit of a position until he has been duly appointed [*i.e.*, promoted] to it." *Testan*, 424 U.S. at 402 (holding that the United States Court of Claims did not have jurisdiction to grant plaintiffs retroactive promotions from a GS-13 level to GS-14 level and back pay, because without first obtaining the promotions, no claims arose for money damages); *see also Todd*, 386 F.3d at 1094–95 (Fed. Cir. 2004) (holding that the United States Court of Federal Claims did not have jurisdiction to adjudicate a claim for back pay, where the plaintiffs could not show entitlement to increased salary, without first obtaining reclassification). But, the United States Court of Federal Claims does not have jurisdiction to order the promotion of a federal employee, from a lower GS grade to a higher GS grade. *See Testan*, 424 U.S. at 403 ("Congress has not made available to a party wrongfully classified the remedy of money damages through retroactive classification.").

But, Plaintiff insists that he is not seeking a "promotion" or a "reclassification" from a lower GS grade to a higher GS grade. A federal employee's "classification" sets his grade level. *See* 5 U.S.C. § 5101(2) ("It is the purpose of this chapter to provide a plan for *classification* of positions . . . whereby individual positions will, in accordance with their duties, responsibilities, and qualification requirements, be so grouped and identified by classes and grades[.]"). An adjustment of step level, however, does not change a federal employee's classification. *Compare* 5 U.S.C. § 5104 (providing the statutory basis for grading positions within the GS System) *with* 5 U.S.C. § 5335 (providing for periodic-step increases in pay for GS System employees). In other words, a GS-14, Step 2 level employee and a GS-14, Step 3 level employee are both "classified" at the same position, even though they receive different rates of pay.

The Office of Personnel Management's ("OPM") guidance regarding the classification of positions states that "Classification standards are issued by OPM to relate the *grade level definitions* in title 5 to specific work situations and thereby provide the basis for assigning to each position the appropriate *title, series, and grade*." OPM, HANDBOOK OF OCCUPATIONAL GROUPS AND FAMILIES 3 (2009) (emphasis added). According to the OPM, step increases are not a classification. OPM, THE CLASSIFIER'S HANDBOOK 39 (1991) ("Performance and incentive awards, the merit promotion plan, *periodic step increases*, and special pay rates, for example, *are all tools used to deal with issues not properly resolved through the classification of*

9

*positions*."(emphasis added)). Consequently, granting the relief requested would not require the court to issue an injunction "reclassifying" Plaintiff.

The Government also contends that the court lacks jurisdiction to make the necessary equitable "predicate" determination that Plaintiff was wrongfully classified at a GS-14, Step 2 level. Gov't Mot. at 7; *see also* Gov't Reply at 10. The Government is correct that, under the Tucker Act, any equitable relief must be "incident of and collateral to" an award of money damages. *See* 28 U.S.C. § 1491(a)(2); *see also James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998) ("[T]he [United States Court of Federal Claims] has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975))). Plaintiff's suit, however, is primarily one for money damages—Plaintiff seeks $33,900 in backpay, plus interest. Compl. at 4. Although Plaintiff requests that the court issue an order directing the FBI to pay him at a GS-14, Step 5 level going forward, this equitable relief is prospective and "collateral to" the primary remedy of granting Plaintiff the backpay requested. *See* 28 U.S.C § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, *issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States*." (emphasis added)).

For these reasons, the court has determined that the January 20, 2016 Complaint invoked a money-mandating statute and made a non-frivolous assertion that Plaintiff is entitled to relief under that statute. *See Fisher*, 402 F.3d at 1172. Therefore, the court has jurisdiction to adjudicate the January 20, 2016 Complaint.

### 2. The Government's 12(b)(6) Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted.

Although the court has jurisdiction to adjudicate the January 20, 2016 Complaint, the Complaint fails to states a claim upon which relief can be granted. *See* RCFC 12(b)(6). The two-step increase under section 5334(b) applies only when an "an employee . . . is promoted or transferred to a position in a *higher grade*." 5 U.S.C. § 5334(b) (emphasis added). Plaintiff, however, was not promoted to a higher grade on August 24, 2014, when he arrived at his permanent position at the Office of Congressional Affairs. Instead, Plaintiff was "laterally promoted" from one GS-14 level position to another GS-14 level position, because the FBI had retroactively classified him at a GS-14, Step 2 level.

Plaintiff is correct that, from June to August 2014, he was briefly classified at a GS-13, Step 8 level position. But, Plaintiff's classification at this level was the result of the ministerial error made by the FBI when it issued the June 15, 2014 SF-50. 7/28/16 Wilson Decl. ¶ 14. The FBI subsequently corrected this error via the issuance of the "Cancellation" SF-50 and the "Extension" SF-50 in September of 2014. Gov't App'x at A8–A9. After these documents were issued, the FBI recouped the extra pay that Plaintiff received from June to August, 2014. Gov't App'x at A12–A14.

Plaintiff's section 5334(b) claim is rooted in the fact that he was temporarily classified at the wrong GS level. But, Plaintiff cannot be expected to earn a windfall from the FBI's ministerial error, that was corrected long before Plaintiff filed the January 20, 2016 Complaint.

In addition, Plaintiff's temporary classification at a GS-13, Step 8 level was directly contrary to FBI Policy Directive 0624D, that provides:

> Any employee on a temporary promotion who has served on that temporary promotion for at least one year or longer and is selected for a higher graded position before the expiration of the temporary promotion assignment and does not report to the new position immediately following the end of the temporary assignment will be placed back to his or her previous grade and assignment *without HPR* so that upon re[-]promotion, the employee does not receive a windfall. This will also apply to temporary promotions that are extended.

FBI Policy Directive 0624D § 9.5.3 (emphasis added).

"HPR" is the highest rate of basic pay previously paid to an individual, and is normally granted when an FBI agent is temporarily promoted and is *not* selected for a permanent promotion at a higher grade. FBI Policy Directive 0624D § 9.5.1 ("Any employee on a temporary promotion who . . . is not selected for a higher-graded position before the expiration of the temporary promotion assignment will be placed back to his or her previous grade and granted HPR."). For example, if a GS-13 level FBI agent received a Temporary Duty Assignment and was temporarily promoted to a GS-14 level, but was not promoted before the end of Temporary Duty Assignment, he would be granted the HPR when he returned to his GS-13 level position. But, that is not what happened here. Instead, Plaintiff was temporarily promoted and selected for a permanent promotion before the end of his Temporary Duty Assignment. Compl ¶ 10. But, his permanent position did not begin immediately at the end of his Temporary Duty Assignment. Compl. ¶¶ 11–12. Therefore, FBI Policy Directive 0624D § 9.5.3 applied to Plaintiff, to prevent the granting of the HPR. If the HPR had applied, then Plaintiff could have been placed at a higher step within the GS-13 level and may have been eligible for two-step increase under 5 U.S.C. § 5334(b), when he was promoted to a GS-14 level position. But, the FBI promulgated Policy Directive 0624D to prevent this from occurring. Gov't Supp. Br. Ex. 2 (5/8/2015 letter from FBI Human Resources Division explaining that "OPM, DOJ, and FBI policy preclude the use of highest previous rate upon demotion under circumstances where re-promotion is anticipated and application of the 2-step promotion rule would result in a financial windfall").

Therefore, Plaintiff's temporary classification at a GS-13, Step 8 level was in error and was contrary to FBI Policy. Instead, Plaintiff retroactively was classified at a GS-14 level position during the time in between the end of his Temporary Duty Assignment on June 15, 2014, and the beginning of his permanent position. *See* Gov't App'x at A8–A9. As a result, Plaintiff was "laterally promoted" from one GS-14 level position to another GS-14 level position when he received his permanent promotion, and section 5334(b) did not apply. 5 U.S.C. § 5334(b) (providing that the two-step promotion rule applies when "an employee . . . is promoted or transferred to a position in a *higher grade*" (emphasis added)).

In the July 6, 2016 Amended Response, Plaintiff concedes the effect of the Cancellation and "Extension" SF-50s, that served to retroactively amend his classification status so that he was not classified at a GS-13, Step 8 level. Pl. Amend. Resp. at 1–2. But, Plaintiff argues the "Cancellation" SF-50 was a "paper trail" created after the fact, to "make it appear as though Plaintiff was never transferred back to a GS-13, Step 8 position." Pl. Amend. Resp. at 4–5. Plaintiff is correct that the paper trail was created "after the fact;" that is, after he was briefly classified and paid at a GS-13, Step 8 level. But, the purpose of the FBI's actions were to go back and correct its previous mistake. And, the FBI's actions were not motivated by this litigation, as they occurred in September, 2014—before the January 20, 2016 Complaint was filed.

Plaintiff adds that "it is well settled that an SF-50 is not a legally operative document controlling on its face an employee's status and rights. It is the true nature of the appointment that governs, not the SF-50." Pl. Amend. Resp. at 4 (quoting *Etokitiot*, 63 F. App'x at 484 n. 1) (internal quotation marks omitted). Plaintiff is correct that the United States Court of Appeals for the Federal Circuit has held that an SF-50 is not a "legally operative document." *See Grigsby v. U.S. Dept. of Commerce*, 729 F.2 772, 776 (Fed. Cir. 1984) ("In summary, the SF–50 is not a legally operative document controlling on its face an employee's status and rights."); *see also Etokitiot*, 63 F.App'x at 484 n. 1 ("It is the true nature of the appointment that governs, not the SF-50."). But, the holdings of our appellate court in those cases do not support Plaintiff.

In *Grigsby*, the plaintiff argued that an erroneously issued SF-50, subsequently retracted by issuance of a second SF-50 a year later, controlled the nature of his appointment to a position. 729 F.2d at 774. Our appellate court, however, rejected the plaintiff's argument, explaining that, "[w]e hold that, under the facts of this case, the Government is not barred from demonstrating ministerial error in the execution of the [earlier] SF-50." *Id.* at 775–76. Likewise, in *Etokitiot*, our appellate court held that an SF-50 that "incorrectly" indicated that an employee's appointment was subject to a one-year trial period, as opposed to the two-year appointment period specified by the controlling regulation, had no legal effect, as compared to the "true nature of the appointment." 63 Fed. App'x at 484.

In other words, the "true nature of the appointment," as controlled by the relevant regulation, rather than any individual SF-50, determines whether Plaintiff is entitled to a two-step increase under section 5334(b). And as, explained above, FBI policy prohibited Plaintiff from being appointed to a GS-13, Step 8 level position when his Temporary Duty Assignment ended. Instead, Plaintiff was laterally promoted within the GS-14 grade; therefore section 5334(b) does not apply. Consequently, the January 20, 2016 Complaint fails to state a claim upon which relief can be granted. *See* RCFC 12(b)(6); *see also Fisher*, 402 F.3d at 1175–76 ("The consequence of a ruling by the court . . . that the plaintiff's case does not fit within the [money-mandating] source . . . is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.").

**IV. CONCLUSION.**

For these reasons, the Government's May 5, 2016 Motion To Dismiss is granted, pursuant to RCFC 12(b)(6). Accordingly, the Clerk is directed to dismiss the January 20, 2016 Complaint. Plaintiff's June 6, 2016 Cross-Motion For Summary Judgment is moot.

**IT IS SO ORDERED.**

s/ Susan G. Braden  
**SUSAN G. BRADEN**  
**Judge**